### Henry Belknap & others *vs.* Edward Belknap & others.

An assignment by a trustee, of his interest in the trust fund, conveys nothing to the assignee, until full satisfaction has been made for subsequent as well as prior breaches of trust by the assignor.

If a trustee who is entitled to a share of the income of the trust fund wastes the estate, the commissions to which he would have been entitled if he had faithfully executed the trust, and his share of the income, are to be applied, first, to the payment of the expenses of executing the trust, until the appointment of a new trustee, and then, to make good the deficiency in the trust fund.

Bill in equity, praying for the removal of Edward Belknap, as trustee under the will of his father, and that an assignment by him of his interest in the trust fund might be declared void, and for other relief.

At the hearing in this court, before *Hoar*, J., it appeared that John Belknap died in 1856, leaving real and personal estate, and a will which, after certain specific bequests, gave to his widow the use of his house on Mount Vernon Street in Boston during her life, one third of the net income, during her life, of certain specified real estate, and an annuity of $1600, and disposed of the residue of his estate as follows :

" All the rest and residue of my estate, real, personal and mixed, not herein before devised and bequeathed, I hereby give, devise and bequeath, in trust, to my sons Edward Belknap and

Henry Belknap, and the survivor of them, and the heirs of such survivor, to be held in trust and managed by them for the following purposes, to wit: 1. From the amount received for income thereof, to appropriate a sum, not more than one fifth nor less than one tenth part of such income, for reinvestment, to preserve and augment the capital; 2. To pay the annuity herein before bequeathed to my wife, and the taxes and repairs on the house, which she is to use free of rent; 3. To divide the remaining income, after the payment above described, into four equal parts, for the use of my four children, Edward, Jane, Henry and George; the parts for Edward, Henry and Jane to be paid to them, and that of George to be paid to his mother, for his use under her direction during his minority; after he becomes of age, to be paid to himself." Then followed provisions for the disposition of the estate after the decease of his widow, which are not now material.

By codicils to this will Edward Belknap was left the sole trustee. He accepted the trust in June 1856, gave a bond according to law, and received a large amount of property, real and personal, and, after the settlement of his second account, absconded, having appropriated to his own use a large portion of the trust estate. On the 2d of April 1859, being largely indebted to the Union Bank, in New York, for money borrowed, he executed to them an assignment, which is copied in the margin.* This assignment was made as additional collateral

* " On the day of the date hereof, the indebtedness of the undersigned to the Union Bank in the city of New York, including debts due and liabilities to mature, has been fixed and settled at the sum of $188,899.62; in which amount the undersigned admits himself to be indebted to said bank, and, with lawful interest, promises to pay. And in consideration of such indebtedness, and of one dollar, to me, the undersigned, in hand paid by the said bank, I, Edward Belknap, in pursuance of an arrangement this day made between me and said bank, do hereby grant, convey, transfer, assign and set over unto said bank, the share of the estate, both real and personal, of my late father, John Belknap, which by the terms of my said father's will can in any event vest in me, as one of his heirs or devisees, and all my right, title and interest therein, including any accumulations made, or hereafter to be made, of the income of said estate; it being expressly understood and agreed (and such being part of the arrangement) that I

security, the bank not being satisfied with what they then had The greater part of that indebtedness is still unpaid. It did not appear whether he was a defaulter to his father's estate at the time of executing the assignment; but it did appear that the officers of the bank had no knowledge or reason to believe that no default or misapplication of the funds held under the will had then been made.

As against Edward Belknap, the bill was taken for confessed; and the Union Bank alone opposed the granting of the relief sought for. A receiver was appointed to take charge of the estate, pending the suit; and it appeared by his accounts that the share of the income, and the commissions, to which Edward might have been entitled, if he had not been a defaulter, had been reserved. It was contended, in behalf of Henry Belknap, that this share of the income and the commissions ought to be applied to make up the amount of the principal which has been misapplied by Edward; and other parties contended that the same should be applied first to make up the deficiency in the income.

The case was reserved for the determination of the whole court.

---

reserve to myself, and that the same shall not pass hereby, and I hereby expressly reserving to myself, in the like manner and with the like effect as if this instrument had not been executed, my right to my share of the income accrued, and hereafter to accrue, of my said father's estate, which by the terms of his said will is to be from time to time, during the lifetime of his widow, distributed among his children.

" To have and to hold the hereby assigned premises, and every part and parcel thereof, unto the said Union Bank and its successors and assigns, as collateral security, in addition to the securities now held by said bank, for the payment of the indebtedness aforesaid, and every part thereof, whether now due or hereafter to mature.

" Witness my hand and seal, this second day of April 1859.

" Sealed and delivered in presence of      Edward Belknap. (Seal.)

     " Daniel Seixas.

     " Wm. Yerrington."

The above was acknowledged before a Massachusetts commissioner for New York, April 2, 1859; and recorded with Suffolk deeds, April 11, 1859, Lib. 754, fol. 95.

*A. H. Fiske & G. Putnam Jr.*, for the plaintiffs, cited *Fuller* v. *Knight*, 6 Beav. 205; *Ex parte Latey*, 1 Deac. 557; *Priddy* v. *Rose*, 3 Meriv. 86, 105; *Ex parte Gonne*, 2 Deac. 278, & 3 Mont. & Ayrt. 166; *Dibbs* v. *Goren*, 11 Beav. 483; *Morris* v. *Livie*, 1 Y. & Coll. 380; *Ord* v. *White*, 3 Beav. 357; *Holland* v. *Cruft*, 20 Pick. 321, 338; *Davies* v. *Austen*, 1 Ves. Jr. 247.

*W. R. P. Washburn*, for the Union Bank, referred to several of the above cases, and cited in addition *Mitford* v. *Mitford*, 9 Ves. 87, 99.

HOAR, J.[*] We shall have no occasion to decide the question which has been argued in this case, whether the assignment by Edward Belknap to the Union Bank was of any validity whatever; because it is very clear, upon principle and authority, that the estate in the hands of the trustee is bound in equity to discharge the legacies to the other *cestuis que trust*, before he or his assigns can claim any part of it, if the estate has been diminished by a violation of his duties as trustee. The equities of those to whom he is bound by his assumption of the trust are prior and superior to any which he can create in the trust fund by contract. As it was held in *Fuller* v. *Knight*, 6 Beav. 205, a trustee cannot bargain away his power to make good a deficiency in the trust fund, arising from his breach of trust.

The doctrine is very succinctly stated in *Morris* v. *Livie*, 1 Y. & Coll. 380, of which the marginal note is as follows: " If an executor assigns his reversionary legacy, the assignee takes it subject to the equities which attached to the executor; and therefore if the latter, though subsequently to the assignment, wastes the testator's assets, the assignee cannot receive the legacy till satisfaction has been made for the breach of trust."

That case was very elaborately argued and carefully considered, and seems more directly in point than any other which has been cited. Though not binding upon this court as an authority, we are satisfied that it rests upon sound principles of equity.

A distinction has been strongly pressed by the counsel for the

---

[*] BIGELOW, C. J. did not sit in this case.

Union Bank, supposed to arise from our statute provisions which require security to be given by executors and trustees for the faithful performance of their trusts. But it is difficult to see any equity which the assignee of a trust fund which is to remain in the hands and under the management of the assignor can have against the sureties on his official bond. The assignor certainly has no claim on the surety to make good to him any loss by his own unfaithfulness. If there were no assignment, equity would obviously require the trustee to pay everything due to others beneficially interested in the fund, if the fund were diminished by his dishonesty, before applying any further part of it to his own use. And there seems to be no good reason why the assignee should be put in a better condition than the assignor. It would be in effect to allow the assignor to take to his own use his share of the trust fund, and by contract with a third party to cast upon his official surety the burden of making it good to a purchaser.

The Union Bank, when they took the assignment, knew that it was of a fund held by Edward Belknap in trust, and which was to continue under his care and management. They took it subject to all the risks of such a condition of things; subject to all equities in favor of the other *cestuis que trust*, arising from the fact that the assignor was trustee; and they acquired no equitable rights against the sureties in the probate bond, because their grantor had none which he could convey.

It does not appear that the defalcation by Edward Belknap is equal to the share of the estate of which he is entitled to the income. If it is not, it is equally for the interest of the bank, and of those who may be entitled to the reversionary interest, if he should not survive his mother, that his share of the income should be applied to make good the capital.

The decree will therefore be, that the assignment shall have no force or effect against any persons beneficially interested in the estate, other than Edward Belknap.

The commissions which have been retained as belonging to Edward Belknap are to be applied first to the payment of the charges and expenses of the receiver. If there is any part

remaining, it is next to be applied to the costs of the suit; and the remainder, if any, is to be distributed as income.

The income belonging to Edward Belknap must be applied to make good the deficiency in the trust fund which he has caused. He must be removed from the trust, and a new trustee appointed, and the case sent to a master to take an account; and all other questions, including that of the ultimate rights of the Union Bank under the assignment, except so far as already determined, be reserved.