In the Matter of the Judicial Settlement of a Final Account of Proceedings of the EQUITABLE TRUST COMPANY OF NEW YORK, as Successor-Substituted Trustee under the Last Will and Testament of ELIZA EISNER, Deceased.

Surrogate's Court, New York County, September 17, 1926.

**Executors and administrators — accounting — assignment of remainder interest — assignee taking with knowledge that his assignor is also trustee of estate, takes subject to subsequent as well as prior equities between trustee and estate — trustee and beneficiary under will herein assigned his interest in remainder prior to time adjudication was made showing he was indebted to estate — assignee cannot claim remainder interest where beneficiary had converted estate funds in excess of share to which he was entitled under will — fact that trustee was not adjudicated in default until after assignment does not warrant finding that assignee is entitled to assignor's share — judgment in prior action by cotrustee is not res adjudicata.**

A beneficiary and remainderman of a testamentary trust, who is also a trustee thereunder, cannot assign his remainder interest so that his assignee may be entitled to said remainder free from any equities between himself, as trustee, and the estate; moreover, an assignee of a remainder interest in a trust, who takes with the knowledge that his assignor is also a trustee, takes subject to subsequent as well as prior equities between the trustee and the estate, and cannot claim the remainder free from the burden of any debt which the trustee may owe the estate.

Accordingly, on this accounting proceeding, the assignee of one of decedent's sons, who not only is the beneficiary and remainderman under his mother's will, but is also a trustee thereof, cannot claim his assignor's share in said estate, where it not only appears that the son had converted estate funds prior

MATTER OF EISNER. 107

Misc. 106]     Surrogate's Court, New York County, September, 1926.

to the execution of the assignment in an amount in excess of his interest in the trust estate, but also that the assignee had acted as counsel for one of the trustees of the trust herein and had, therefore, full knowledge of the fiduciary capacity of his assignor at the time of the assignment, as well as knowledge that said trustee had converted estate funds prior to the execution of the assignment.

Since the trustee's relations are equitable and no legal adjudication is necessary if he be actually in default, it is immaterial that the trustee had not been adjudicated in default until after the assignment was executed.

The judgment in a prior action by a cotrustee is not *res adjudicata* in this proceeding as to the claim of the assignee to the trustee assignor's distributive share in the principal of the trust at the termination thereof.

FOLEY, S.   The report of Edward S. Dore, referee, is confirmed upon his opinion and the exceptions thereto are overruled.

*Murray, Aldrich & Roberts*, for the petitioner.

*Vincent L. Leibell*, special guardian.

*Michael F. Dee*, for George J. Carr and Julia Paull Carr.

*Jerome Eisner*, for Julius Eisner and others.

*Sanford H. E. Freund*, for Sophia Freund.

*Arthur G. Hays*, for Blanche M. Hays.

*Ralph K. Jacobs*, for Martin D. Greenwald.

*Lachman & Goldsmith*, for Hattie A. Greenwald, individually and as executrix.

*Charles S. Fettretch*, for Jerome Eisner.

EDWARD S. DORE, Referee.   The testatrix died January 3, 1885. She left the residue of her estate in trust during the joint lives of her son Samuel and her daughter Mary, or the survivor of them, to pay the net income to her surviving children or their issue, and on the death of the survivor of the two children whose lives measured the trust, to divide and distribute the principal equally among her surviving children and the issue of deceased children *per stirpes*. She had eight children.   When the trust terminated on February 18, 1925, two children had died without issue; three survived; others had died leaving issue.   Under the terms of the will, therefore, the trustee in its account proposes to divide the principal of the trust estate into six equal parts, each of the surviving children and the issue of deceased children *per stirpes*, being entitled to one-sixth thereof, or $9,570 each.

The only objections filed to the account concern the one-sixth part coming to Julius H. Eisner, a son of the testatrix, trustee and remainderman.   The account sets forth (Schedule Q) that the said Julius H. Eisner, under the terms of the will, is entitled to one-

sixth of the corpus, amounting to $9,570, but it also sets forth (Schedule Q) that by final judgment of the Supreme Court, New York county, July 3, 1900, one George W. Carr was adjudged the owner of all Julius H. Eisner's interest in the estate and the trustee is unable to determine the legal effect of said judgment.

Jerome Eisner, son of the testatrix and beneficiary and remainderman, objects to the claims of both Julius H. Eisner and George J. Carr as assignee of said George W. Carr, to said one-sixth of the remainder, on the ground that Julius H. Eisner is indebted to the estate in an amount in excess of the value of said one-sixth interest.

George J. Carr objects to the account: (1) In so far as Julius H. Eisner is designated as in any way entitled to the said one-sixth; and (2) in so far as the account fails to designate George J. Carr as absolutely entitled to the said one-sixth, on the ground that by the final judgment above referred to George W. Carr was adjudged the owner of all the right, title and interest of Julius H. Eisner in the estate, and said George W. Carr assigned and conveyed to George J. Carr all his right, title and interest to the said one-sixth of the remainder.

The objections arise out of the default and misfeasance of Julius H. Eisner, one of the trustees, and out of an assignment of his interest in 1896 by a receiver in supplementary proceedings and a judgment of the Supreme Court in 1900.

In 1896, in an action brought in the Supreme Court, New York county, by Julius H. Eisner against Mark H. Eisner, a judgment of $152.58 in favor of Mark H. Eisner and against Julius H. Eisner was docketed on June 5, 1896; on December 8, 1896, a deed and bill of sale were executed and delivered to one George W. Carr by the receiver appointed in proceedings supplementary to execution under said judgment whereby all the right, title and interest bequeathed and devised to the judgment debtor, said Julius H. Eisner, under the will of Eliza Eisner, deceased, were assigned, transferred and conveyed to George W. Carr for the sum of $10. The account shows that since 1900 the trustee has paid Carr or his assignee $2,400 of income otherwise payable to Julius H. Eisner, or 240 times the purchase price. Carr's assignee is now claiming an additional $9,570, or Julius Eisner's distributive share of the principal of the trust fund.

On January 14, 1899, a decree of this court was made, adjudging that the said Julius H. Eisner had in his hands money of the estate in the sum of $6,865.69, for moneys received and retained by him and not deposited in the bank account of the estate.

Thereafter an action was brought in the Supreme Court, New York county, by Mark H. Eisner, one of the trustees, against

MATTER OF EISNER. **109**

Misc. 106]    Sarrogate's Court, New York County, September, 1926.

his cotrustee and other persons interested including George W. Carr. The complaint in that action contained, among other prayers for relief, the following:

*"Fourth:* That the claim of ※ * * George W. Carr, to be paid the share of the income payable under the will to Julius H. Eisner, be ascertained and adjudged."

The answer of George W. Carr realleged the pertinent allegations of the complaint and ended with the following prayer for relief:

*"Wherefore,* Defendant prays that he be adjudged to be the lawful owner of all the estates, rights and interests bequeathed and devised to Julius H. Eisner in and by the will of Eliza Eisner, deceased, and be adjudged and entitled to and that he be paid all and singular the income which was bequeathed or devised to said Julius H. Eisner in and by said will of Eliza Eisner, deceased."

A referee appointed in said action filed a report stating the account of Julius H. Eisner and finding that on March 27, 1900, Julius H. Eisner was indebted to the estate in the sum of $5,913.71. On July 3, 1900, a decision was made in the said action overruling all exceptions to the referee's report, confirming the report as filed, and decreeing that Julius H. Eisner's share of the trust income in hand and to accrue should be paid to George W. Carr as assignee. Thereafter, on July 11, 1900, a decision and final judgment confirming this report was entered, holding that Julius H. Eisner had $5,913.71 in his hands belonging to the estate; directing him forthwith to pay the same to the substituted trustee, with interest at six per cent per annum; and further decreeing that George W. Carr was the owner of all the right, title and interest of Julius H. Eisner individually under the will, and was entitled to receive from the substituted trustee " the same share or part of the income now in its hands or to be by it hereafter received which Julius H. Eisner is given by the will or would under the terms of said will have been entitled to receive, had the said Carr not acquired his interest as beneficiary thereunder * * *."

Julius H. Eisner is still living. He has never paid any part of the principal or interest of the sum in which he was and is indebted to the estate. The sum with interest now amounts to more than his one-sixth distributive share in the remainder.

The first question to be determined is whether the above-mentioned decision and judgment of 1900 is *res adjudicata* in this proceeding, as to the claim of George J. Carr to Julius H. Eisner's distributive share in the principal of the trust at the termination thereof. This question I answer in the negative. One claiming that a judgment entered in a previous proceeding constitutes a binding adjudication in a later proceeding must affirmatively show

that the question involved in the later proceeding was actually litigated in the prior action. (*Rudd* v. *Cornell*, 171 N. Y. 114; *Zoeller* v. *Riley*, 100 id. 102.) This burden the claimants have not sustained. On the facts and on the stipulation, it could not be sustained. The parties have stipulated, and an examination of the complaint in the action before Mr. Justice GIEGERICH bears out the stipulation, that the action was brought to have Carr's claim "to the *income* payable under the will of Eliza Eisner * * * to Julius H. Eisner * * * ascertained and adjudged." It is true the decree in that action goes further than the opinion of the court therein and refers to an assignment of "all the rights" of Julius H. Eisner, but this is immediately coupled with the direction that he is entitled to receive the *income* otherwise payable to Julius H. Eisner. The pleadings in that action, the opinion, and the decree that the trustee pay over to Carr the *income* accrued *and to accrue*, with no direction as to the disposition of the principal, all show that the present issue of Carr's right to receive Julius H. Eisner's share of the principal, free from any of the trustee's unpaid indebtedness to the estate at the termination of the trust, was neither litigated, considered nor determined in that action. I, therefore, hold that said judgment is not conclusive upon the parties to the present controversy as to the disposition of Julius H. Eisner's one-sixth of principal.

That judgment did, however, sustain the validity of Carr's claim to the income, which he has since received, though such income, under the statute in effect at decedent's death, was inalienable. (1 R. S. 730, § 63; Id. 773, §§ 1, 2; *Stringer* v. *Young*, 191 N. Y. 157; *Genet* v. *Foster*, 18 How. Pr. 50, 54; *Matter of Ungrich*, 201 N. Y. 415.) But that is not before this court; no objection was ever made to the payment of such income and none is raised on this accounting. The issue here is confined exclusively to the payment of the principal.

We must, however, determine whether George J. Carr may claim the one-sixth of the principal by reason of the assignment of 1898. That assignment clearly purported to give all the interest of Julius H. Eisner in the estate, and, so far as the remainder interest was concerned, the assignment was clearly valid. Expectant estates are alienable in the same manner as estates in possession. (2 R. S. 725, § 35; *Cohalan* v. *Parker*, 138 App. Div. 849.) But at the termination of the trust, Julius H. Eisner was indebted to the estate for moneys converted by him in an amount with interest, in excess of his one-sixth distributive share. Can Julius H. Eisner's assignee claim this one-sixth free from the burden of his assignor's debt to the estate?

MATTER OF EISNER. **111**

Misc. 106]    Surrogate's Court, New York County, September, 1926.

On analysis, this resolves itself into the following question of law: Can a beneficiary and remainderman of a testamentary trust, who is also a trustee, assign his remainder interest so that his assignee can claim the remainder, free from any equities between the trustee and the estate? That the assignee takes subject to all existing equities at the time the assignment was made is indisputable. (*Owen* v. *Evans*, 134 N. Y. 514.) But the more limited question whether such an assignee takes subject to *subsequent* equities between the trustee assignor and the estate, has apparently not been adjudicated in New York State. Counsel and I have industriously sought for a precedent in this jurisdiction and found none. Apparently there is none. But it is not necessary to repose the decision of this case on a ruling that the assignee of a trustee who is also a beneficiary, takes subject to subsequent equities between his assignor and the estate. This assignment occurred December 8, 1896. The stipulation shows that prior to that time Julius H. Eisner had retained in his own hands and not paid into the estate moneys aggregating $3,753.10. This, with interest, now amounts to more than the one-sixth that he would otherwise be entitled to at the termination of the trust. But even if this were not so, we are not without authority expressly holding that an assignee of a remainder interest in a trust, who takes with knowledge that his assignor is also a trustee, takes subject to subsequent as well as prior equities between the trustee and the estate, and cannot claim the remainder free from the burden of the trustee's debt to the estate. (Lewin Trusts [12th ed.], 893, 894; *Belknap* v. *Belknap*, 87 Mass. 468; *Jenkinson* v. *N. Y. Finance Co.*, 79 N. J. Eq. 247, 254; *Clack* v. *Holland*, 19 Beav. 262; *Barnett* v. *Sheffield*, 1 DeG., M. & G. 371; *Cole* v. *Muddle*, 10 Hare, 86; *Wilkins* v. *Sibley*, 4 Giff. 442; *Hopkins* v. *Gowan*, 1 Molloy, 561; *Morris* v. *Livie*, 1 Y. & C. C. C. 380; *Doering* v. *Doering*, L. R. 42 Ch. Div. 203; *Jacubs* v. *Rylance*, L. R. 17 Eq. 341.)

In *Belknap* v. *Belknap* the Supreme Judicial Court of Massachusetts said:

" We shall have no occasion to decide the question which has been argued in this case, whether the assignment by Edward Belknap to the Union Bank was of any validity whatever; because it is very clear, upon principle and authority, that the estate in the hands of the trustee is bound in equity to discharge the legacies to the other *cestuis que trust*, before he or his assigns can claim any part of it, if the estate has been diminished by a violation of his duties as trustee. The equities of those to whom he is bound by his assumption of the trust are prior and superior to any which he can create in the trust fund by contract. As it was held in *Fuller*

v. *Knight*, 6 Beav. 205, a trustee cannot bargain away his power to make good a deficiency in the trust fund, arising from his breach of trust.

"The doctrine is very succinctly stated in *Morris* v. *Livie*, 1 Y. & C. C. C., 380, of which the marginal note is as follows:

"'If an executor assigns his reversionary legacy, the assignee takes it subject to the equities which attached to the executor; and therefore if the latter, though subsequently to the assignment, wastes the testator's assets, the assignee cannot receive the legacy till satisfaction has been made for the breach of trust.' * * *

"If there were no assignment, equity would obviously require the trustee to pay everything due to others beneficially interested in the fund, if the fund were diminished by his dishonesty, before applying any further part of it to his own use. And there seems to be no good reason why the assignee should be put in a better condition than the assignor. * * *

"The Union Bank, when they took the assignment, knew that it was of a fund held by Edward Belknap in trust, and which was to continue under his care and management. They took it subject to all the risks of such a condition of things; subject to all equities in favor of the other *cestuis que trust*, arising from the fact that the assignor was trustee."

The same rule is stated by Lewin in the following language (p. 894): "And where the assignor is a trustee or executor it is immaterial whether the debt to the trust or executorship was contracted before or *after the assignment* of the beneficial interest * * *."

In *Jenkinson* v. *N. Y. Finance Co.* (*supra*) the court said: "The right of the estate to be protected against breaches of trust by the trustee is enforced even to the extent of holding the assignment by a legatee who is also the trustee, to be subject to the liability of the trustee to make good all breaches of trust, as well after as before the assignment."

The principle is firmly entrenched in English law. In *Hopkins* v. *Gowan* (*supra*) Sir A. HART says: "If an executor assigns his legacy and afterwards is guilty of a *devastavit*, the Court will lay its hand upon the legacy, disregarding the assignment. * * * Even if he was a stranger, the assignee of such a legatee takes only what the decree shall adjudge to him, and if an executor misconduct himself, so that when the accounts are finally wound up, he is subject to costs, the assignee of his legacy must bear the consequence."

Though these authorities are not binding on this court, I am satisfied that they rest on sound principles. The assignee should not be permitted to claim this one-sixth principal free from the burden of his trustee assignor's debt to the estate.

MATTER OF McCULLOUGH.    113

Misc. 113]    Surrogate's Court, New York County, December, 1926.

To hold otherwise would be to give trustees who are also beneficiaries and remaindermen, an opportunity to receive their remainder interest by anticipation and at the same time permit their assignees to collect the same again although the trustee had converted estate moneys far in excess of his beneficial interest.

Especially is this true where, as here, the assignee had acted as counsel for one of the trustees of this very trust, was, therefore, put on full knowledge of the fiduciary capacity of his assignor at the time of his assignment, and would also seem to have had at that time information that Julius H. Eisner had converted estate funds prior to the making of the assignment. (Jerome Eisner, Exhibit 1, September 1, 1926; Exhibit E, referred to in complaint, March 30, 1899.)

It is immaterial that the trustee had not been adjudicated in default until after the assignment. A trustee's relations are equitable and no legal adjudication is necessary if he be actually in default.

On these facts and on the principles of law above set forth, I am of the opinion that the one-sixth of the remainder in controversy should go to the trust estate in payment of the trustee's indebtedness thereto.

It follows that the objections of George J. Carr should be overruled and the objection of Jerome Eisner sustained and the share otherwise payable to Julius H. Eisner in the principal of the trust estate should be paid over to the other beneficiaries named in Schedule Q of the account, in proportion to the respective interests of said beneficiaries under the will in the remaining five-sixths of the corpus of the trust estate.