In the Matter of the Accounting of J. WALTER McCLANCY, as Executor of STEPHEN McCLANCY, Deceased.

Surrogate's Court, Queens County, December 28, 1943.

*William R. McVay* for J. Walter McClancy, as executor of Stephen McClancy, deceased.

*Gray & Tomlin* for Propagation of the Faith.

*Bokat & Bokat* for Ida Bokat and another.

*Ignatius Wilkinson, Corporation Counsel (Philip Sokol* and *Vincent Marcellino* of counsel), for Department of Welfare of the City of New York.

*Henry W. Parker* for Morris Plan.

*Frederick J. Britton,* special guardian for Howard McClancy, infant.

SAVARESE, S.   For a period of several years prior to the death of the testator on September 16, 1942, one of his adult children had received from the Department of Welfare of the City of New York public financial assistance for himself and his minor children.   By the terms of decedent's will, admitted to probate on October 16, 1942, this child became entitled to a one-seventh part of his residuary estate amounting to approxi mately $1,950.   Between October 27, 1942, and November 20, 1942, the legatee executed two assignments to secure loans of $1,200 and $725, respectively.   On or about May 6, 1943, the Commissioner of Welfare filed a claim with the executor for the moneys advanced which was allowed upon the hearing by consent in the reduced sum of $2,800.   The only question requiring determination upon the accounting of the representative is whether the right of subrogation asserted by the executor is prior or subordinate to the rights claimed by the assignees.

At common law a parent was not liable, save in exceptional circumstances, for the support and maintenance of an adult child.   (*Matter of St. Lawrence State Hospital,* 13 App. Div. 436; *Betz* v. *Horr,* 250 App. Div. 457, revd. on other grounds 276 N. Y. 83; *Matter of May,* 255 App. Div. 31; *Matter of Fox,* 250 App. Div. 31, affd. 275 N. Y. 604; 46 C. J., Parent and Child, § 47; *Matter of Wright,* 172 Misc. 215, 216.)   By statute a grandparent of sufficient means may be held liable for the support of a grandchild where the parents of the child are unable to adequately provide for it.   (*Matter of Calhoun* v. *Calhoun,* 256 App. Div. 672; *Hodson* v. *Stapleton,* 248 App. Div. 524; *Klebes* v. *Condon,* 260 App. Div. 238; Public Welfare Law, §§ 125, 128, now Social Welfare Law, §§ 101, 104.)   The parties here, recognizing that the decedent was possessed of sufficient means, have acknowledged the validity of the claim asserted by the Commissioner of Welfare and the liability of the estate for its payment.   The imposition of this statutory obligation, followed by payment thereof by the executor under the compulsion of a judicial decree, instigates an inquiry as to the rights and remedies of the executor against the legatee as the actual recipient of the financial assistance extended.   Upon and prior to the decedent's death the legatee was liable for the moneys received by virtue of an implied contract.   (Public Welfare Law, §§ 125, 128, now Social Welfare Law, §§ 101, 104.)   He was primarily liable and the testator secondarily for the relief extended ᵉto himself and his children.   (*Matter of Sagendorf,* 257 App. Div. 1042; *Matter of Larkin,* 262 App. Div. 868.)   In  equity  and  good  conscience  the  legatee

should pay the debt. It would seem that if the executor is compelled to pay he ought to be subrogated to the rights of the Commissioner of Welfare. Subrogation, an equitable doctrine taken from the civil law, is broad enough to include every instance in which one party pays a debt for which another is primarily answerable and which in equity and good conscience should have been discharged by the latter, so long as the payment was made either under compulsion or for the protection of some interest of the party making the payment, and in discharge of an existing liability. (Selden on Subrogation [2d ed.], pp. 2, 4, cited in *Gerseta Corporation* v. *Equitable Trust Co.,* 241 N. Y. 418, 425.) The doctrine of subrogation is a device to promote justice. The right of subrogation or of equitable assignment is not founded upon contract nor the absence of contract, but is founded upon the facts and circumstances of a particular case and upon the principles of natural justice, and generally where it is equitable that a person furnishing money to pay a debt should be subrogated for the creditor or in place of the creditor, such person will be so substituted. (*Pittsburgh-Westmoreland Coal Co.* v. *Kerr,* 220 N. Y. 137, 140, 143; *Pease* v. *Egan,* 131 N. Y. 262.) It is the method which equity employs to require the payment of the debt by him who in good conscience ought to pay it, and to relieve him whom none but the creditor could ask to pay. (*New York Title & Mortgage Co.* v. *First Nat. Bank,* 51 F. 2d 485, 487.) It is a highly favored remedy and, while not a matter of strict right, the courts are inclined to extend, rather than restrict, its application. (*Bonham* v. *Coe,* 249 App. Div. 428, affd. 276 N. Y. 540; *3105 Grand Corp.* v. *City of New York,* 288 N. Y. 178, 182.) A surety who has paid the debt of his principal is entitled to every remedy of the creditor. (*Edson* v. *Dillaye,* 17 N. Y. 158.) It is a general and well-established principle of equity that a surety, or a party who stands in the situation of a surety, is entitled to be subrogated to all the rights and remedies of the creditor whose debt he is compelled to pay, as to any fund, lien or equity which the creditor had against any other person or property on account of such debt. (*Mathews* v. *Aiken,* 1 N. Y. 595, 599.) Even if it were true that the surety here could maintain no action at law against the principal for the money, the situation would be stronger for the application of the doctrine of subrogation. (*Mathews* v. *Aiken, supra.*) It is familiar law that a surety paying the debt of his principal is entitled to be subrogated to all of the creditor's rights, privileges, liens, judgments and mortgages, and that to enjoy the

benefit of these no assignment from the creditor is necessary. The surety, by the mere fact of payment, is put into the shoes of the creditor. (*U. S. F. & G. Co.* v. *Carnegie Trust Co.,* 161 App. Div. 429.) The liability of the testator arose before his death. Since the son was primarily liable, there also existed coincidentally an equitable relationship of principal and surety which imposed upon the son a duty to indemnify his father. This relationship and obligation survived the death of the testator. No intervening assignment could affect them. (*Matter of Grifenhagen,* 174 Misc. 559; *Matter of Eisner,* 129 Misc. 106, 111, affd. 222 App. Div. 727; *Clapp* v. *Meserole,* 1 Abb. N. Y. App. 362.) A surety must generally have paid the debt before he can proceed to enforce a right of subrogation, and apparently for the purpose of determining the rights to which the surety can be subrogated, his right is not regarded as accruing until the time of payment; but, at least, for the purpose of determining the superiority of the surety's rights over those of the principal, or creditor, and those claiming under them, a surety's equity or potential right to subrogation is generally regarded either as relating back to, or having its inception at, the time when the contract of suretyship is entered into. (60 C. J., Subrogation, § 51.) The surety is in equity regarded as a creditor of the principal, and, upon the insolvency of the latter, may retain for his protection, even as against a bona fide purchaser, any assets in his hands belonging to his principal; otherwise, a surety in such a case would be wholly without remedy when the plainest principles of justice are in his favor. And this relation of debtor and creditor between principal and surety, so as to entitle the latter to avoid a voluntary conveyance by the former, commences at the date of the obligation of suretyship and not from the time of the payment of the debt, though until the latter event he has no technical cause of action against the principal and consequently no right to be subrogated to the securities held by the creditor. (24 Amer. & Eng. Encyc. Law [1st ed.], Subrogation, pp. 202–203.)

In the light of the foregoing principles, the debt of the legatee will be regarded as equitably transferred by the creditor to the testator as of the time when the relation of principal and surety was created, which was in the lifetime of the testator even though payment be made thereafter by his executor. In the transmission of property of any kind from one person to another, the former owner can, in reason, only transfer what he himself has to part with, and the other can only take what is transferred to him. The rule, as generally stated, is, that the purchaser

takes only the interest which his assignor had to part with. (*Bush* v. *Lathrop,* 22 N. Y. 535, 538.) An assignee of non-negotiable choses in action takes them not only subject to all the equities existing between the parties to the instrument, but also to the equities which third persons could enforce against the assignor. (*Stevenson Brewing Co.* v. *Iba,* 155 N. Y. 224, 227; *Greene* v. *Warnick,* 64 N. Y. 220; *Central Trust Co.* v. *West India Imp. Co.,* 169 N. Y. 314, 324.) An assignment of a distributive share is not a conveyance of tangible property but the assignment of an unliquidated claim, which is always subject to cross demands existing at the date of the assignment.

The interest of the legatee being subject to the testator's equitable right of reimbursement which arose prior to the making of the assignments, the rights of his assignees are likewise subordinate thereto. A contrary determination would result in the legatee having his debt satisfied and receiving advance payment of his legacy. The decree settling the account may authorize the executor to retain the entire share of the legatee in view of the fact that it appears to be less than the amount of the claim of the Department of Welfare. Account settled. Proceed accordingly.