ADELINE P. DE ANGELIS, Plaintiff, *v.* PAUL J. DE ANGELIS, Defendant.

Supreme Court, Special Term, Oneida County, January 9, 1951.

*Saverio M. Flemma* for plaintiff.

*Henry A. Cappelli* for defendant.

SEARL, J. Motion No. 1 asks that defendant be punished as for a contempt of court in failing to pay to plaintiff all sums claimed to be due according to the provisions of a decree of absolute divorce granted by Hon. FRANK J. CREGG, Official Referee, and filed in the office of the Clerk of the County of Oneida on the 29th day of June, 1950.

Motion No. 2 seeks to relieve defendant from an order of contempt on the ground that after the evidence was introduced in this case and after the referee had directed defendant to pay for the support of his three children $30 per week to the plaintiff, a different arrangement was entered into with the consent of all parties. The defendant also asks for the modification of the judgment of divorce insofar as it provides for specific payments to be made weekly to the plaintiff for the support of the children. The motion also asks that the custody of the children of the marriage of the ages of seven, six and four years be granted to the defendant, or, in the alternative, that the infant children be placed in a suitable Catholic home or institution. The defendant is a World War II veteran, and is employed as a police officer by the City of Utica.

It is unnecessary for the purpose of these motions to consider the claims made by the defendant that his own father cohabited with the plaintiff prior to the dissolution of the marriage. It is sufficient to state that the defendant offered no evidence upon the trial of this action before the Official Referee on the 12th day of June, 1950. The defendant sets forth in his moving papers that two days after the case was tried, namely June 14, 1950, he agreed with the plaintiff to execute a quitclaim deed, title and interest in and to certain real property located on Rutger Street, Utica, to either the plaintiff, or, at the plaintiff's suggestion, to the father; also, to execute an assignment to his father, Joseph, of 10% of his wages for money alleged to have been loaned by the father to the son. As a consideration for such assignment he urges that the wife agreed to accept $65 per month for the support of the children instead of the sum of $30 per week. Defendant claims he had continued payments of $65 per month to the plaintiff until October 5, 1950, when he claims his former wife married his own father, Joseph De Angelis, about one week after the divorce decree became final. In view of the facts found to exist, and hereinafter referred to, this court must refuse to find the defendant guilty of willful contempt. If the plaintiff can substantiate her claim that the arrangement made for the transfer of defendant's interest in the house was not for the benefit of and at the behest of the

plaintiff, she may pursue her remedy to obtain a judgment against the defendant for any unpaid sum, provided a court or jury sees fit to award the same.

Relative to Motion No. 2, in which defendant seeks a reduction of payments for the support of the children and transfer of custody from the mother, a most unusual situation exists. Defendant urges that his children are about to be taken from him and treated, brought up, and educated not as the grandchildren of his father, but as the children of his father. It is true that the court is confronted with a situation entirely foreign to how a home should properly be constituted. True, the defendant is granted the right to visit his children. To say that in order for him to visit them he must knock at the door of a house that would naturally repel him would be asking too much forbearance on his part, especially when he might be required to address his former wife as " mother."

Our courts have hesitated to take young children away from the care of their mother. In this instance there is no claim that the mother is not devoting herself to the care of the children, nor is there any claim that the two older children are not having proper religious instruction. When the father of the defendant married the plaintiff, he thereby legally assumed the duty of supporting the children, provided they were unable to obtain their support from their own father. This obligation was increased by the fact that his own grandchildren became his stepchildren. Section 101 of the Social Welfare Law provides that even a grandparent of a recipient of public assistance or care shall, if of sufficient ability, be responsible for the support of such grandchildren. Subdivision 4 of section 31 of the Children's Court Act, as amended by chapter 810 of the Laws of 1942, provides that parents or grandparents of a dependent minor, who has been a resident of the county at any time during the twelve months preceding the filing of the petition for the grandchild's support, are charged with such support in the event that the grandchild is unable to maintain itself or is likely to become a public charge, and that as well, a step-parent of a child, under subdivision 5, is declared legally chargeable with the support of a stepchild under similar circumstances. The courts have so construed the provisions of the Social Welfare Law. (See *Matter of McClancy*, 182 Misc. 866, affd. 268 App. Div. 876, affd. 294 N. Y. 760.)

Although this court is by no means attempting to say that the father of these children should be relieved from his respon-

sibility for their support, still, under these most unusual circumstances, the father should not be unduly penalized.

Nor should the father be compelled to make his way into this home and be subjected to the embarrassment of asking his own father if he can see his children.

For the present, at least, the children should be left in the care of the mother, but the children should grow up to recognize and respect their own father. To this end an order may enter permitting the father to have the children one day a week, either Saturday or Sunday, at his option. To relieve any embarrassment on the part of the father of calling at the new home that his own father has established for the wife, the wife should deliver the children to the residence of the defendant or such other point in the city of Utica as he may designate, at 9:30 in the morning, the father to return the children not later than 7:30 the same evening. Under the circumstances, the amount to be paid weekly by the defendant should be reduced to $65 a month.

Order accordingly.