### MUSKOGEE NAT. TEL. CO. v. HALL et al.

(Circuit Court of Appeals, Eighth Circuit. October 27, 1902.)

No. 1,688.

1. APPEAL—QUESTIONS REVIEWABLE—FAILURE OF INTERVENER TO JOIN IN APPEAL.

An appellate court, on affirmance of the decree appealed from as between the original parties, has no power to reverse it so far as it denied the relief prayed for by an intervener in his own right, where such intervener did not join in the appeal.

2. TELEPHONES—POWER TO GRANT EXCLUSIVE FRANCHISE.

Telephone companies, like telegraph companies, are important agencies in the transaction of interstate commerce, and neither a state nor an Indian nation has power to grant to one company an exclusive right to maintain telephone lines within its territory. Such a grant, being void ab initio, cannot be invoked to prevent the construction and maintenance of lines by other companies or persons, although they are not interstate, but merely local.

3. SAME—INDIAN TERRITORY—EFFECT OF REGULATION BY CONGRESS.

Congress having provided, by Act March 3, 1901 (31 Stat. 1083), for the granting of franchises for telephone lines in the Indian Territory, in the exercise of its power to regulate commerce among the states and with the Indian tribes, such legislation necessarily annulled any grants previously made by one of the Indian nations which conflict therewith.

Appeal from the United States Court of Appeals in the Indian Territory.

On July 17, 1899, the Muskogee National Telephone Company, the appellant, filed its bill of complaint against R. F. Hall and G. W. Pitman, two of the appellees, in which the complainant alleged, in substance, that it had an exclusive franchise which had been granted to it by the Creek Nation on December 7, 1897, authorizing it to erect, construct, operate, and maintain a system of telephone lines within the Muskogee or Creek Nation, in pursuance of which it was operating a large number of telephone lines in the Creek Nation, and was engaged in extending such lines throughout the nation; that R. F. Hall and G. W. Pitman, in violation of its alleged exclusive franchise, were proposing to erect and conduct a telephone line in the town of Tulsa, within the limits of the Creek Nation; and that in the prosecution of said purpose they were then engaged in setting their poles and stringing their wires within said town, to the great and irreparable injury of the complainant. It accordingly prayed for an injunction restraining the defendants from further erecting telephone poles and stringing wires in the town of Tulsa, or in any other portion of the Creek Nation, and from operating telephone lines in said town, or elsewhere in the nation. The defendants filed a demurrer to the bill in the United States courts in the Indian Territory for the Northern district, where said suit was instituted, and upon the hearing thereof the demurrer was sustained, and an injunction, such as was prayed for, was refused. Thereupon, on August 3, 1899, the Creek Nation intervened in said cause by filing a complaint in which it alleged, in substance, that it was interested in the controversy, in that it was entitled to a royalty of 5 per cent. upon the net earnings of the Muskogee National Telephone Company, to whom it had granted an exclusive franchise for the transaction of a telephone business. It further alleged that it was the owner in fee of the land upon which the defendants were erecting their telephone poles, and that by erecting the same they were trespassing upon the lands of the Creek Nation. In view of the premises, the Creek Nation prayed that the defendants, Hall and Pitman, be restrained from erecting telephone poles and stringing wires in the town of Tulsa, or in any other part of the Creek Nation. The defendants, Hall and Pitman, filed an answer to the intervening complaint of the Creek Nation, wherein they asserted a right to erect a telephone line in the town of Tulsa, which was an incorporated town of the Creek Nation, under and by virtue of a resolution of the council of the town of Tulsa that had been duly adopted on June 5, 1899. They further asserted a right to erect the telephone line in question under and by virtue of a permit granted to them for the erection of the line on October 10, 1899, by the acting commissioner of Indian affairs. The case afterwards came on to be heard in the lower court upon the pleadings aforesaid, and upon such hearing it was ordered and adjudged by the court that the complainants take nothing by their suit, and that the injunction prayed for, both by the telephone company and the Creek Nation, be denied. The telephone company excepted to the decree and prosecuted an appeal to the United States court of appeals in the Indian Territory; but the Creek Nation did not join in the appeal and, so far as appears, took no part in the litigation in the appellate court. On the hearing of the case in the appellate court, that court affirmed the decree "in so far as it [related] to the plaintiff, the Muskogee National Telephone Company," but reversed the decree as to the Creek Nation, and remanded the cause to the lower court, with directions, "at the suit of the Creek Nation, * * * to enjoin the defendants from further proceeding in the erection and operation of its system of telephones in the town of Tulsa until the said Hall and Pitman shall be fully authorized and empowered to do so by the secretary of the interior under the act of March 3, 1901." Thereupon the Muskogee National Telephone Company appealed from that decree to this court, naming R. F. Hall, G. W. Pitman, and the Creek Nation as appellees. It assigned as error that the court of appeals in the Indian Territory erred in not reversing the judgment of the lower court, which had overruled its prayer for an injunction.

C. B. Stuart and J. H. Gordon, for appellant.

Z. T. Walrond, for appellees.

Before SANBORN and THAYER, Circuit Judges, and LOCH-REN, District Judge.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The judgment of the United States court of appeals in the Indian Territory, in so far as it undertook to reverse the decree of the lower court and to grant an injunction in favor of the Creek Nation, was erroneous, for the reason that the nation had not appealed from the decree of the lower court, so far as the record now before us discloses. The Creek Nation intervened in the cause for the protection of its own interest, namely, for the protection of the revenue which it expected to derive from the exercise by the telephone company of the exclusive franchise which the nation had attempted to grant, and to prevent the erection of telephone poles on land of which it claimed to be the owner in fee. The case was fully heard on the bill and the defendants' answer thereto, and the nation's right to any relief was denied. It failed to take an appeal from the decree, and the adjudication of the lower court, so far as it was concerned, accordingly became final. We fail to see any ground, therefore, upon which the decree of the United States court of appeals in the Indian Territory, reversing the judgment of the lower court "as to the Creek Nation," can be sustained. The nation was not before it seeking any relief, but was apparently satisfied with the ruling of the lower court, since it did not appeal.

The decision of the lower court as respects the Muskogee National Telephone Company was clearly right, unless the exclusive franchise which it asserted to erect and maintain lines of telephone within the Creek Nation can be sustained as a valid grant. If it did not have an exclusive franchise, it goes without saying that it had no right to complain because the defendants were erecting a line of telephone in the town of Tulsa, although they were doing so without lawful authority. No right of the complaining company was violated by their so doing, unless its franchise was exclusive and was being invaded; and that the Creek Nation had no power to grant an exclusive franchise such as it attempted to confer is settled, we think, by the decision in Pensacola Tel. Co. v. W. U. Tel. Co., 96 U. S. 1, 8, 24 L. Ed. 708, where precisely such a franchise, granted by the state of Florida as respects only two counties of that state, was adjudged to be invalid. It is true that in the latter case the franchise that was held to be invalid had been granted to a telegraph company; but telephone companies are equally agencies of interstate commerce, and every reason which was or that may be assigned against the grant of a monopoly to maintain telegraph lines applies with equal force against the grant of such a monopoly to a telephone company. Telephone companies, like telegraph companies, are common carriers of information, and their lines are daily employed in the transaction of interstate commerce. Some courts have held that a telephone company is included by the words "telegraph company." Southern Bell Telephone & Telegraph Co. v. City of Richmond (C. C.) 78 Fed. 858, 860, and cases there cited. But, be this as it may, telephone companies, like telegraph companies,

are important agencies in the transaction of interstate commerce, and no state can grant to one telephone company the exclusive right to operate telephone lines within its borders; and what a state cannot do, because it operates as an obstruction to the free flow of interstate commerce, the Creek Nation (which is said to embrace as much territory as some of the states) cannot do. It is well settled that, in the exercise of its power to regulate commerce among the several states and with the Indian tribes, congress has full authority to grant rights of way through the land occupied by the five Indian tribes domiciled in the Indian Territory for the construction of railroads (Cherokee Nation v. Southern Kan. R. Co., 135 U. S. 641, 10 Sup. Ct. 965, 34 L. Ed. 295; Stephens v. Cherokee Nation, 174 U. S. 445, 485, 19 Sup. Ct. 722, 43 L. Ed. 1041); and in the exercise of this power it has recently authorized the secretary of the interior to grant rights of way through the Indian Territory for the construction, operation, and maintenance of telephone and telegraph lines. 31 Stat. 1083, c. 832, § 3. It follows, of course, that none of these tribes had the power to declare that any one telephone company should have the sole right to construct and operate telephone lines within its borders, since the existence of such a monopoly would have a necessary tendency to prevent free communication between those who reside outside of, and those who reside within, the territory. To this extent the grant of such a franchise as the one in question operates to obstruct interstate commerce.

It is argued in behalf of the appellant, and that view seems to have been adopted by the United States court of appeals in the Indian Territory (Telephone Co. v. Hall, 64 S. W. 600), that because the defendants below were engaged in erecting a telephone line simply within the town of Tulsa, and had not, so far as shown, made a connection with lines outside of the nation, the exclusive franchise in question did not interfere in any way with interstate commerce, and may be upheld against it as a valid grant. The fault with this reasoning is that the exclusive feature of the grant was void ab initio. It did not remain in force until the defendants had extended their line of telephone to the borders of the nation, and cease to be operative when they had made a connection with some exterior line of telephone; but it was invalid from the time the grant was made, being an attempt on the part of the nation to exercise a power vitally affecting interstate commerce, which did not belong to it. Pensacola Tel. Co. v. W. U. Tel. Co., 96 U. S. 1, 11, 24 L. Ed. 708. Even if this were not so, and even if it should be conceded that until congress legislated on the subject the exclusive feature of the franchise might be upheld, yet, when congress, on March 3, 1901 (31 Stat. 1083), in the exercise of its constitutional power to regulate commerce, saw fit to provide how franchises for the construction and maintenance of telephone lines within the Indian Territory must be obtained, such action on its part necessarily prevailed over all local regulations on the subject, and operated to extinguish such exclusive rights to construct and maintain lines of telephone or telegraph within the territory as had theretofore been granted. No act of the Creek Nation on a subject within the lawful jurisdiction of the federal government can be given the effect of

nullifying or interfering to any extent with legislation by the congress of the United States, when it sees fit to pass laws on the subject. Pensacola Tel. Co. v. W. U. Tel. Co., supra; Wabash, St. L. & P. R. Co. v. Illinois, 118 U. S. 557, 566, 567, 7 Sup. Ct. 4, 30 L. Ed. 244; Chicago, B. & Q. R. Co. v. Iowa, 94 U. S. 155, 163, 24 L. Ed. 94; Munn v. Illinois, 94 U. S. 113, 135, 24 L. Ed. 77.

From any point of view, therefore, when this case was decided by the United States court of appeals in the Indian Territory on October 4, 1901, the Muskogee National Telephone Company, in view of the then recent act of congress of March 3, 1901, supra, had no right to complain that any of its charter privileges were being invaded, as it had not up to that time established any lines of telegraph in the town of Tusla, and the decree of that court, affirming the decree below in so far as the telephone company was concerned, was clearly right. The decree as respects the Creek Nation was erroneous, for the reasons already stated. The result is that the decree of the United States court of appeals in the Indian Territory should be reversed, and the decree of the United States court in the Indian Territory, Northern division, which was rendered on April 10, 1900, being for the right party, should be affirmed. It is so ordered.