PETERSON v. DAVISON.

(District Court, S. D. New York. December 9, 1918.)

REFERENCE &8(1)—PROCEDURE IN FEDERAL COURTS—APPOINTMENT OF AUDITOR.

In an action at law to recover for goods sold and delivered, which involves the examination of long accounts, many items of which are in dispute, a federal court may properly appoint an auditor to make a preliminary examination, hear the evidence, and report his findings, with a view to simplifying the issues for the jury.

At Law. Action by Walter Peterson, receiver, against Arthur Sidney Davison. On motion for appointment of auditor. Granted.

Kellogg & Rose, of New York City, for plaintiff.
Zabriskie, Murray, Sage & Kerr, of New York City, for defendant.

AUGUSTUS N. HAND, District Judge. This is a motion for the appointment of an auditor to report as to the facts and circumstances in an action brought to recover for coal sold and delivered. The items in dispute are very numerous. I am convinced, from reading the affidavits, that the trial of this case will involve a consideration of so many separate issues of fact that a jury will, under any circumstances, have constant difficulty in remembering and passing upon the issues

involved. The contention of plaintiff's counsel that the facts are largely admitted ignores over 200 items, which the defendant proposes to attempt to establish by way of defense. Without a preliminary investigation the situation will be likely to be almost intolerable for the court, and the jury might become so confused as to reach its verdict largely by guesswork. This is the kind of case where a preliminary report by a skilled auditor will be of substantial service. The practice is approved, and is under proper conditions most desirable. Davis v. St. Louis Ry. Co. (C. C.) 25 Fed. 786; Fenno v. Primrose, 119 Fed. 801, 56 C. C. A. 313; Corporation v. Houlihan, 184 Fed. 252, 106 C. C. A. 394; Craven v. Clark (C. C.) 186 Fed. 959; Vermeule v. Reilly (D. C.) 196 Fed. 226; United States v. Wells (D. C.) 203 Fed. 146.

The practice of appointing an auditor in an action at law when numerous items are involved in the issues of fact raised by the pleadings appears to have originated in the method of procedure under the old common-law action of account. Various statutes have been enacted in different states to remedy the difficulty incident to the trial of an action involving a great number of disputed items by a jury.

In New York a referee has, since colonial times, been appointed under the state statutes in cases involving a so-called long account. This referee does not report in aid of the court or jury, but is, under the present Code of Procedure, appointed to try the issues.

The history of the New York practice is set forth with learning by Judge Earl, in the case of Steck v. C. F. & I. Co., 142 N. Y. 236, 37 N. E. 1, 25 L. R. A. 67. It appears from that case that, while under the Dutch rule actions involving long accounts could be referred to arbitrators, this mode of trial was not pleasing to the English colonists, and disappeared after the British occupation. For nearly 100 years thereafter actions in the common-law courts were wholly triable before juries, except the action of account, which was only applicable to the limited class of cases hereinafter mentioned. The difficulties inherent in this action were such that, as Judge Earl says:

"The practice became general for merchants and others having long accounts to enforce their collection by actions of assumpsit, which were always then triable by jury. But the embarrassments attending the trial of such actions by jury were such that, December 31, 1768, an act (2 Van Schaick's Laws of New York, 517) was passed, with a preamble as follows: 'Whereas, instead of the ancient action of account, suits are of late, for the sake of holding to bail, and to avoid the wager of law, frequently brought in assumpsit, whereby the business of unraveling long and intricate accounts, most proper for the deliberate examination of auditors, is now cast upon jurors, who at the bar are more disadvantageously circumstanced for such services; and this burden upon jurors is greatly increased since the laws made for permitting discounts in support of a plea of payment, so that by the change of the law and the practice above mentioned, the suits of merchants and others upon long accounts are exposed to erroneous decisions, and jurors perplexed and rendered more liable to attaints, and by the vast time necessarily consumed in such trials, other causes are delayed and the general course of justice greatly obstructed. Be it therefore enacted, etc., that whenever it shall appear probable in any cause depending in the Supreme Court of Judicature of this colony (other than such as shall be brought by or against executors or administrators) that the trial of the same will require the examination of a long account, either on one side or the other, the said court is hereby authorized, with or without the consent of parties, to refer such cause by rule, to be made at discretion, to referees, * * * and if the report or award

of the referees, or of the major part of them, shall be confirmed by the said court, and any sum be thereby found for the plaintiff, judgment shall be entered for the same, with a relicta verificatione, as by confession with costs, if by law the plaintiff would have recovered costs, had a verdict passed in the same cause for the sum so reported to be due; but if, after payment pleaded, any sum shall be reported to be due to the defendant, and the award be confirmed, he shall have judgment and recover his costs. * * * And when such referees shall report that nothing is due from the defendant, and the report be confirmed, then judgment shall be entered as by non pros., and the defendant shall recover his costs, to be taxed, and such judgment be a perpetual bar.' "

This statute was re-enacted and was in force at the time of the adoption of the state Constitution of 1777, and consequently was not subject to the guaranty as to jury trial provided therein.

It is to be noticed that these statutory enactments did not provide for a trial before a referee, for the report of the referee was subject to confirmation, but they did do away with jury trials in cases involving a long account.

Section 1013 of the Code of Civil Procedure makes the referee the court, dispenses with a jury, and judgment is entered upon his report as upon a decision of the court itself.

In Massachusetts, an official may be appointed, in such cases called an auditor; but his report is not necessarily a final determination upon which judgment is entered, but is prima facie evidence, if a jury trial of the issues is demanded.

In the federal courts, where a jury trial is a constitutional right, any auditor's report can be used only as an aid to court and jury. It can be regarded at most as evidence, and nothing more. The report is but a method of simplifying the issues.

Professor Langdell has, with much learning, expounded the history of the common-law action of account in his essay on Equity Jurisdiction published in the Harvard Law Review, vol. 2, pp. 243–257. This ancient form of action was allowed only against guardians, receivers, and bailiffs. A receiver in the sense used was a person who received money belonging to another for the sole purpose of keeping it safely and repaying it to the owner. A bailiff was in effect a person who was a managing agent of land, and was accountable for the rents.

It thus appears that the action of account always involved a fiduciary relation between plaintiff and defendant, and was limited to certain specific cases.

In the common-law action of account the defense consisted of either a denial of the fiduciary relation, or an affirmative plea of "plene computavit," and the issue as to whether the defendant should render an account or not was triable by a jury. If there was a verdict for the plaintiff, judgment "quod computet" was rendered against the defendant, upon which, unless he got bail, he was imprisoned until any judgment which might be rendered against him should be satisfied. In the judgment "quod computet," which was essentially interlocutory, the court appointed three auditors to take and state the account. If the account showed a balance in favor of the plaintiff, final judgment was rendered thereon for the balance due.

If a person liable to account at law converted plaintiff's money to his

own use, or promised to pay it, an action of either "indebitatus assumpsit," or debt, would lie, provided the amount had been stated. See Langdell article, supra, pp. 253, 254, and cases cited.

It is easy to see how this ancient action of account served as a historical background for the modern statutory enactments in aid of actions at law, where multiplicity of items render a trial by jury very difficult. The action of "indebitatus assumpsit" gradually supplanted at common law the action of account, though it extended over a much wider field. This form of action involved but one stage, and provided for a jury trial without auditors, but was at times confused with account, and used where account was the strictly proper remedy, until the latter became practically obsolete as a form of action at law. Many of its features survived in a suit in equity for an accounting, and I think it may be said that all issues formerly determined in the common-law action of account were, after it became obsolescent, determined either at law in an action of indebitatus assumpsit, or in equity in a suit for an accounting.

It thus appears that the statement of Brewer, J. (then Circuit Judge), in the case of Davis v. St. Louis & S. F. Ry. Co. (C. C.) 25 Fed. 786, that "it was the practice in the old English courts, the old common-law practice, where it was apparent that the examination of a long account was involved, to refer such account to a referee to report on the facts," was historically quite inaccurate as applied to an action arising out of breaches of contract, where no fiduciary relation appears to have existed. Nevertheless his decision, like others I have heretofore cited, shows the tendency of the common law to seize upon analogies derived from former practice, and extend that practice to meet manifest needs.

The leading case on this subject is the case of Fenno v. Primrose, 119 Fed. 801, 56 C. C. A. 313, by the Circuit Court of Appeals of the First Circuit, which has been since followed in that circuit, and by Judge Holt in the case of Vermeule v. Reilly, supra, in this district, and approved of in a learned opinion by Judge Sanford in the case of United States v. Wells, supra.

I can see no constitutional difficulty in allowing a report of an auditor to simplify the issues to be introduced in evidence before the jury, subject, of course, to the control of the court as to all matters of law which may be applicable to the same, and subject to the final determination by the jury as to all matters of fact in the case, whether embraced in the report or not. Craven v. Clark (C. C.) 186 Fed. 959.

The case of Sulzer v. Watson (C. C.) 39 Fed. 414, which was heard before Wallace and Wheeler, JJ., in the Circuit Court for the District of Vermont, prior to the Circuit Court of Appeals Act, is in no way against the conclusion which I have reached and is an interesting case, showing the accurate knowledge of Judge Wheeler, who wrote the opinion, as to forms of action. That was an action of book account, known to Connecticut and Vermont lawyers, and involving an appointment of auditors to hear and finally determine the issues. The plaintiff moved for the appointment of auditors to try the issues. The court denied this for the very good reason that it

would deprive the defendant of his right of trial by jury. Judge Wheeler said:

"It is an action at law, although not in any form known to the common law; and, although courts of equity have jurisdiction of some matters of account, they never have had any of matters merely in assumpsit, which may be involved in an action like this. These are called matters of account, because they may be kept on books of account, and not by reason of any relation of trust between the parties out of which the transactions might arise, such as courts of equity take cognizance of. * * * In this case there can be no trial by auditors, therefore no auditors should be appointed."

This case merely holds:

(1) That in any action of assumpsit brought in a United States court a trial by jury is necessary.

(2) That, where a defendant is in no fiduciary relation to a plaintiff, a reference which would dispense with a jury is never permissible.

(3) That a state statute cannot deprive the defendant of his right to a jury trial in any action brought in a federal court.

In the case of Swift v. Jones, 145 Fed. 489, 76 C. C. A. 253, the Circuit Court of Appeals for the Fourth Circuit held that in an action at law the trial judge had no power, even with the acquiescence of both parties, to order a trial before a special master, who should report his findings to the court, and that such mode of procedure deprived the parties of their jury trial. This case was referred to by Judge Sanford in United States v. Wells, supra, and does no more than decide that trial by jury must be preserved. In my opinion the form of the present order, just as the method of procedure under the Massachusetts statute, does essentially preserve trial by jury.

The order to be entered should appoint Wallace Macfarlane, Esq., auditor,

"to make a preliminary investigation as to the facts, hear the witnesses, examine the accounts of the parties and make and file a report in the office of the clerk of this court, with a view to simplifying the issues for the jury, but not finally to determine any of the issues in the action; the final determination of all issues of fact to be made by the jury on the trial, and the auditor to have power to compel the attendance of, and administer the oaths to, witnesses—the expense of the auditor, including the expense of a stenographer, to be paid by either or both parties to this action, in accordance with the determination of the trial judge."

The said auditor shall separately report as to the issues of fact, the following matters especially:

(1) All deliveries of coal alleged to have been made by the Interstate Coal Company to the defendant which are not disputed by the defendant.

(2) All payments alleged to have been made for coal delivered by the Interstate Coal Company to the defendant, which are not disputed by the plaintiff.

(3) All deliveries of coal alleged to have been made by the Interstate Coal Company to the defendant, which are disputed by the defendant, with his opinion as to each of such disputed items.

(4) All payments alleged to have been made by the defendant for coal delivered by the Interstate Coal Company to the defendant which

are disputed by. the plaintiff, with his opinion as to each of such disputed items.

(5) The amount of charges for freight and demurrage which the defendant claims to have been obliged to pay for the account of the Interstate Coal Company, the items thereof admitted by the plaintiff to be chargeable, and the items in dispute, with his opinion as to each of such disputed items.

(6) All deliveries of coal alleged to have been made by the Interstate Coal Company to the defendant, which are claimed by the defendant to have differed upon analysis from the requirements of the city of New York, with his opinion as to each of such items.

(7) All settlements claimed by the defendant to have been made between the Interstate Coal Company and the defendant, whereby deductions were allowed by the plaintiff, because the coal differed upon analysis from the requirements of the city of New York, with his opinion as to each of such allowances.

(8) The amount of coal alleged by the defendant to have been contracted to be sold to the defendant by the A. H. Dollard Coal Sales Company, and assumed to be delivered by the Interstate Coal Company, which, when analyzed, did not conform to the requirements of the city of New York, and the items of damage which the defendant claims to have suffered in order to fulfill its contracts for resale to William Farrell & Son and Burns Bros., with his opinion as to each of such items.

Judge Holt made an order much resembling the above in the case of Vermeule v. Reilly, supra.