In the Matter of the Estate of MARY E. STRANGE, Deceased.

Surrogate's Court, New York County, October 30, 1937.

*Clarence K. McGuire*, for J. Simpson & Company, Inc., petitioner.

*Wood & Marshall*, for the administratrix *c. t. a.*, respondent.

DELEHANTY, S. In making this application to compel an accounting the petitioner, a domestic corporation, calls itself the " assignee of all of the distributees." If this description is correct there can be no doubt that the petitioner is a person interested in the estate within the meaning of section 259 of the Surrogate's Court Act.

In her answer the administratrix *c. t. a.*, by denial and an affirmative defense, challenges the status of the petitioner. She sets forth *in extenso* an agreement between all of the so-called distributees on the one hand and the petitioner on the other, which was executed prior to the decedent's death. It recites the guaranty by the three distributees to repay petitioner for advances made by it from time to time to their deceased mother, Florence A. Wilson. Then it states that accounts of the parties having been cast up, a compromise was reached whereby the distributees acknowledged themselves indebted to petitioner in the sum of $25,000, which they promised to pay, with interest at four per cent from October 1, 1931, " when and as the same [*i. e.*, the $25,000] shall be received by [the distributees] * * * upon the distribution and payment to them of their shares or interest in the estate of Mary E. Strange, an incompetent." To furnish security for performance according to the terms of this promise, the agreement shows that the distributees " for value received have sold and by these presents do grant, assign and convey unto J. Simpson & Company, Inc., all our right, title and interest in and to the estate of Mary E. Strange, an incompetent, not to exceed * * * $25,000 * * * with interest thereon, at four (4%) per cent per annum from October 1st, 1931; * * * hereby constituting * * * the said J. Simpson & Company, Inc., our true and lawful attorney irrevocable in our name, place, and stead for the purpose aforesaid, to ask, demand, sue for, attach, levy, recover and receive all such sum and sums of money which now are, or may hereafter become due, owing and payable for or on account of all or any of the accounts * * * above assigned."

This is a *post-obit* agreement. (*Crawford* v. *Russell*, 62 Barb. 92, 95; 31 Cyc. 968.) Presumably the respondent regards it as void. Agreements of this character at common law were void, and so they remain today in some jurisdictions. (6 C. J. Secundum, 1057–1060; 17 A. L. R. 588; 44 id. 1465.) At common law such an assignment was a nullity for want of subject-matter. It represented the " mere volition " of the assignor-heir presumptive to

sell his expectancy to another. It is a volition which has nothing on which to act because " the interest of the heir does not differ in its nature from that of an expectant devisee, which is an interest which every one may claim to have in every other's estate." (*Jackson ex dem. Varick* v. *Waldron*, 13 Wend. 178, 214.)

At common law, furthermore, *post-obits* were viewed as contrary to public policy. Various reasons were assigned to explain this result. The cases refer to the kinship of *post-obits* with gambling contracts or to the need to protect improvident children from the fraud and deceit of money speculators or to the desirability of strengthening parental control over children as grounds for accepting the conclusion that public policy forbids these transactions. (See cases reviewed in A. L. R., *supra,* and at 36 L. R. A. 335.) Surrogate FOWLER, in a characteristic opinion, concurred in these views, remarking that it was " contrary to public policy that *spes successionis* should be assignable." (*Matter of Zimmerman,* 104 Misc. 516, 529.) But in this view he seems to have been mistaken so far as New York is concerned.

In 1852 the New York view of an assignment of a bare possibility was authoritatively set forth in *Field* v. *Mayor of New York* (6 N. Y. 179). There one Bell assigned moneys to become due for work which he expected to perform for the defendant under a contract which he had not yet negotiated. The court said (p. 186): " There was indeed no present, actual, potential existence of the thing to which the assignment or grant related, and, therefore, it could not, and did not operate, *eo instanti,* to pass the claim which was expected thereafter to accrue to Bell against the corporation; but it did, nevertheless, create an equity, which would seize upon those claims as they should arise, and would continue so to operate until the object of the agreement was accomplished."

Generalizing this result, the court added that " courts of equity will support assignments * * * of contingent interests *and expectations* * * * provided the agreements are fairly entered into, and it would not be against public policy to uphold them." (Italics supplied.) In *Kimball* v. *F. & M. Nat. Bk.* (138 N. Y. 500, 506) the rule is reasserted.

In 1867 this principle was held to be decisive of the question in the leading *post-obit* case of *Stover* v. *Eycleshimer* (4 Abb. Ct. App. Dec. 309, also reported less adequately in 42 N. Y. [3 Keyes] 620, affg. 46 Barb. 84). There John L. D. Eycleshimer, three years before his father's death, gave one Sherman his power of attorney, expressed to be an " irrevocable power of attorney and coupled with an interest, to ask, demand, sue for, recover and receive all such interest, estate, property and effects, real and personal, as I now have, or at any time hereafter may have or claim

as heir at law, devisee, legatee or next of kin of my father, John P. Eycleshimer, of * * * and to compromise and settle the estate of my said father and any estate or interest I have or may hereafter have or claim therein, * * * and apply the same respectively to the payment of a debt of $1,500, or upwards, in which I am now justly indebted to her " (pp. 309, 310). This transfer, said the court, would be enforced not as a " trust attaching to the estate, but as a right of contract " (p. 312).

It should be noted that no special type of agreement need be present to support *post-obit* contracts. A mortgage, marriage settlements, a contingent fee contract, a bond conditioned on the performance of an agreement to transfer, an order on a bank and transfers for security have all been sustained. (17 A. L. R. 607.)

*Nugent* v. *Smith* (202 App. Div. 279; affd., 234 N. Y. 611) is the most recent case considered by the appellate courts of this State. There the two potential distributees of testatrix were a son and a granddaughter. The record of the case on appeal shows that a few months prior to the death of testatrix her son contracted a marriage, knowledge of which he feared would cause his mother to change her will. In consideration of the granddaughter's silence respecting the marriage (and other promises not important now to relate) the son six days before his mother's death entered into a written agreement with his niece whereby he agreed " to assign, transfer and convey * * * a one-half (1/2) interest in and to any and all property " which might come to him from his mother's will or otherwise. By this contract the granddaughter would benefit by about $6,000,000. A complaint in an action for specific performance was held to state a good cause of action.

In the present case the respondent administratrix has limited her affirmative defense to a presentation of the contract. It has been shown that on its face the contract operates as an equitable assignment. No assertion that the distributees were legally incapable of contracting has been made; nor is it disputed that the contract involved valuable consideration. Nowhere in the record before the court is there any suggestion of fraud affecting either the promisors or third parties. The administratrix has not sought to make the assignors parties to this proceeding. Though herself an assignor, she has not appeared here in an individual capacity. No party challenges the agreement except on the basis of essential invalidity, herein discussed. On this state of the record, therefore, it is necessary to conclude that the petitioner as an equitable assignee is a person interested in the estate and that its petition to compel an account should be granted.

Submit, on notice, order accordingly.